UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| NICHOLAS SPIRDIONE, | CASE NO. 2:22-cv-11018 |
| *Plaintiff*, | HON. NANCY G. EDMUNDS |
| v. | DISTRICT JUDGE |
| HEIDI E. WASHINGTON, et al., | HON. PATRICIA T. MORRIS |
| | MAGISTRATE JUDGE |
| *Defendants*. | |
| _____/ | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION (ECF No. 24) AND
PLAINTIFF'S MOTION FOR A SHOW CAUSE ORDER (ECF No. 26)**

I.   **RECOMMENDATION**

For the following reasons, **I RECOMMEND** that this Court **DENY** Nicholas Spirdione's motion for a preliminary injunction (ECF No. 24) and **DENY** Spirdione's motion for Defendants Washington and Kisor to show cause (ECF No. 26) as moot.

II.  **REPORT**

   A.  **Background**

Nicholas Spirdione is a prisoner in the custody of the Michigan Department of Corrections. (ECF No. 32, PageID.310). In May 2022, Spirdione filed a fifty-page complaint against more than thirty defendants while he was housed at the G. Robert Cotton Correctional Facility ("JCF"). (*Id.*; ECF No. 1). The complaint

1

contains a bevy of unrelated claims which the Court previously summarized as follows:

> (1) Plaintiff alleges that several of the defendants have ignored plaintiff's complaints that he is suffering from symptoms that could be consistent with colorectal cancer, such as rectal bleeding, the loss of significant amounts of blood, weight loss, constipation, stomach pains, diarrhea, and abdominal bloating or gas. (2) Plaintiff claims that several defendants have interfered with his legal mail, in an attempt to prevent him from paying outstanding court costs. Plaintiff claims that his failure to pay these court costs could delay his parole. (3) Plaintiff alleges that he has been denied a special gluten free diet which he needs because he suffers from celiac disease. (4) Plaintiff alleges that a false misconduct ticket was issued against him and that he was denied due process at the subsequent hearing conducted in which he was found guilty. Plaintiff also alleges that he has been wrongly convicted of several other misconducts. (5) Plaintiff claims several defendants have wrongly denied several grievances he filed with the Michigan Department of Corrections' (M.D.O.C.) internal grievance system. Plaintiff also claims he has in some instances been denied the ability to file a grievance. (6) Plaintiff claims he was injured when he was assaulted by another inmate but that several defendants refused to provide him medical care for the back pain which resulted from this assault. (7) Plaintiff alleges that several defendants retaliated against him for filing complaints about the above incidents by confiscating his prison issued tablet device, which he claims has evidence which would support his claims. (8) Plaintiff alleges that various defendants have tampered with his medications which he needs for his abdominal issues. Plaintiff claims he has also been denied medications. (9) Plaintiff alleges that he is receiving inadequate nourishment from the food that he is being served. (10) Plaintiff alleges that his copy of the Black's Law Dictionary was wrongly confiscated. (11) Plaintiff claims that he contracted COVID-19 after being placed in close proximity with another prisoner who had COVID-19, in violation of the M.D.O.C.'s own policies to prevent the spread of the illness, and (12) Defendant Onwanibe engaged in unconsented to physical contact with plaintiff.

(ECF No. 7, PageID.89–90).

The Court screened Spirdione's complaint and dismissed all claims against Nagy, Bailey, Russell, Prough, and Austin. (*Id.* at PageID.95; ECF No. 16, PageID.118). The Court also dismissed Spirdione's "wrongful grievance" claims against Russell, Cobb, and McComber-Hemry, and Blunt wrongfully denied his administrative grievances. (ECF No. 7, PageID.92–93).

After receiving Spirdione's complaint, officials noticed that the document described detailed plans to kill MDOC employees. (ECF No. 32, PageID.304–05). Specifically, Spirdione shared that in 2020, he planned to make an appointment with one of his physicians so that he could "violently kill him for his continual disregard for [Spirdione's] wellbeing."[1] (ECF No. 1, PageID.18, ¶ 81). Spirdione also described two "alternative" plans to conduct a "hostile military takeover" of the housing units. (*Id.* at PageID.39–42, ¶¶ 137–44). His preferred plan was to "break[]" the "neck" of a correctional officer passing his cell, "drag[]" the officer's "body into a" cell, and chang[e] into the officer's "gear." (*Id.* at PageID.40, ¶138). From there, Spirdione shared that he planned to "barricade" all but one entrance to the housing unit, creating a "choke point" that he would "booby trap." (*Id.*) He would then report a "knife fight" to draw other officers to this "booby trapp[ed]" choke point and "inflict maximum damage [on] his enemies." (*Id.*)

---

[1] Spirdione also sent a letter to this physician's home address in May 2022, raising security concerns among MDOC officials. (*Id.* at PageID.353–57).

3

Spirdione shared that he also considered making "a taser proof suit" out of blankets and "obtaining a knife." (*Id.* at PageID.40, ¶ 139). With this equipment, he would "execute" an officer, "take his keys, and slaughter every nurse" who was not in his "good graces." (*Id.*) Although Spirdione declined to act on these plans for two years, he states in his complaint that "[t]he last three and one half . . . years of incarceration . . . transformed" him into a "murderous lunatic who has extreme difficulty on occasion keeping the rage and crazy contained." (*Id.* at PageID.40–41, ¶ 141).

And this was not the first time Spirdione had shared these plans with MDOC officials. (ECF No. 24, PageID.196, 198–99). In March 2022, Spirdione "divulged . . . elaborate plans targeting" prison staff. (*Id.* at PageID.198). He shared that he has had "contemplated" carrying out these plans before," but that he "talk[ed] himself out of it." (*Id.*) However, he stated that because of "various frustrations" with medical staff, he continued to have homicidal ideations over the last year and was concerned that he might not be able "to resist these thoughts." (*Id.*)

Because of Spirdione's alarming homicidal ideations and his admitted difficulty restraining himself, Tiffani Kisor, the assistant deputy warden for JCF, increased Spirdione's security level classification from level one to level five while the MDOC investigated his risk to prison security. (ECF No. 32, PageID.305, ¶¶ 13–15). A prisoner's security level describes the degree of confinement necessary

4

to house a prisoner based on his or her threat to "the safety and scrutiny of the facility"—the higher a prisoner's security classification, the more restrictions are necessary to house the prisoner. (*Id.* at PageID.302, 304, ¶¶ 3, 8).

Because JCF could not house level five prisoners, officials transferred him to the Ionia Correctional Facility ("ICF"). (*Id.* at PageID.305–06, ¶¶ 16–17). After spending about two months at ICF, Spirdione filed a motion for a preliminary injunction, asking the Court to order Kisor and Defendant Heidi Washington, the director of the MDOC, to reduce Spirdione's custody level security level and return him to JCF. (*Id.* at PageID.306, ¶ 17; ECF No. 24). He explains that the new restrictions associated with his increased security level have frustrated his efforts to pursue this litigation. (ECF No. 24, pageID.184–86, ¶¶ 8–12, 15). He also argues that his new security classification has harmed him in several other ways. For example, he states that ICF is ill-equipped to accommodate his hearing loss and that he can no longer meet with his usual psychologist. (*Id.* at PageID.83, ¶¶ 3–5).

On the same day he filed his motion for a preliminary injunction, Spirdione filed a motion asking the Court to order Defendants Washington and Kisor to "show cause" as to why his transfer to ICF was justified. (ECF No. 26, 216). Without referencing Spirdione's motion for a show cause order, the undersigned ordered all defendants to respond to Spirdione's motion for a preliminary injunction. (ECF No. 27, PageID.223). Washington and Kisor later filed a response brief, in which they

explain Kisor's rationale for transferring Spirdione to ICF. (ECF No. 32, PageID.273–79).

### C. Analysis

#### 1. Preliminary Injunction

I suggest that the Court should deny Spirdione's motion for a preliminary injunction because he seeks relief unrelated to his claims against the Defendants. Under Federal Rule of Civil Procedure 65, the Court may enter a preliminary injunction "to prevent irreparable injury" to the plaintiff. *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). The purpose of a preliminary injunction "'is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends [he] was . . . harmed through the illegality *alleged in the complaint*.'" *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (emphasis added) (quoting *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir.1997)). Put differently, a preliminary injunction is appropriate where "the movant has shown she is likely to win at trial but that waiting until then to provide relief will cause her irreparable harm." *Berryman v. Stephenson*, No. 21-10925, 2022 WL 3684591, at *2 (E.D. Mich. Aug. 25, 2022).

Because preliminary injunctions are designed to accelerate the relief a plaintiff normally could not receive until after trial, a plaintiff "'must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint'" to obtain preliminary injunctive relief. *Colvin*, 605 F.3d at 300 (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). And to demonstrate an adequate "relationship" between the injunction and the complaint, it is not enough for a plaintiff to simply show that the injunction would prevent a harm that is like those alleged in the complaint. *See id.*; *see also Omega*, 111 F.3d at 16. Nor is it enough for the plaintiff to show that the irreparable harm arises out of the same set of facts as the complaint. *See Jackson v. Proctor*, No. 3:20-cv-4810155, 2020 WL 4810155, at *2 (E.D. Ky. July 27, 2020). The injunction must remedy the precise harm for which the Plaintiff seeks redress in his or her complaint. *See Berryman*, 2022 WL 3684591, at *2.

That is why most courts hold that they cannot issue a preliminary injunction to enjoin prison officials from interfering with a prisoner's access to courts where the prisoner does not allege any such interference in his or her complaint. Take *Devose v. Herrington* for example. 42 F.3d at 471. There, a prisoner sued a group of prison officials for providing him "inadequate medical treatment" after he was "injured in a van accident while being transported between units." *Id.* After filing his complaint, the prisoner moved for a preliminary injunction, asserting that the

7

officials retaliated against him for filing the lawsuit by "fil[ing] trumped-up disciplinary charges. . . ." *Id.* The Eighth Circuit denied the prisoner's motion, reasoning that while his "assertions might support additional claims against the same prison officials," his motion for a preliminary injunction had "nothing to do" with the "claim raised" in his complaint. *Id.* And the fact that the officials' actions may have interfered with the prisoner's ability to litigate his lawsuit made no difference to the Court's analysis. *See id.*; *accord Annabel v. Frost*, 2018 WL 5295887, at *2 (6th Cir. Aug. 10, 2018); *Jackson*, 2020 WL 4810155, at *2; *Beasley v. Westbrooks*, No. 3:16-cv-03010, 2018 WL 272682, at *6 (M.D. Tenn. Jan. 3, 2018).

As in *Devose*, Spirdione's motion for a preliminary injunction "has nothing to do" with the harms alleged in his complaint. 42 F.3d at 471. In his motion, Spirdione asks the Court to order Washington and Kisor to remove him from ICF's level five housing, arguing that the restrictiveness of his new unit Ionia has stymied his ability to litigate this action. (ECF No. 24, pageID.184–86, ¶¶ 8–12, 15). He explains that since transferring to Ionia, prison officials have only allowed him to use the prison law library three time over the course of two months, even though Spirdione requested to use the library on twelve occasions. (*Id.* at PageID.184, ¶ 9). He also states that prison officials have viewed his litigation materials while searching his cell and that they have confiscated some of his "legal property" after finding that

8

Spirdione exceeded the maximum number of items he could keep in his cell. (*Id.* at PageID.184–85, ¶¶ 8, 10, 12).

Yet these actions fall outside the scope of Spirdione's complaint. The complaint does not allege that the Defendants ever inhibited Spirdione's efforts in any litigation. (ECF No. 7, PageID.89–90). And it certainly does not reference the specific actions mentioned in Spirdione's motion, which did not occur until after Spirdione filed his complaint. (*See* ECF No. 24; ECF No. 32, PageID.304–07, ¶¶ 10–22). True, Spirdione's complaint does allege that officials prevented him from paying outstanding court fees. (ECF No. 1, PageID.19, ¶ 83). But this incident occurred at a different facility, involved different officials, and unlike the events at Ionia, it did not stymie an ongoing action against prison officials. (*See id.*) At bottom, Spirdione asks the Court to do more than simply expedite his desired relief while his case is pending, he seeks to use a Rule 65 motion to circumvent pleading what should be a new cause of action.

The same is true of Spirdione's assertions that an injunction is necessary because (1) ICF lacks adequate resources to accommodate his hearing loss, (2) he cannot meet with his usual psychologist, (3) he cannot continue treatment with a specific health care provider, and (4) he cannot attend a class the Parole Boards required him to complete. Again, Spirdione addresses none of these issues in his complaint. Each of these injuries occurred after Spirdione filed his complaint, and

9

none of them are continuations of ongoing harms identified in his complaint, and each of these injuries concern issues that are completely distinct from those addressed in the complaint. *See Beasley*, 2018 WL 272682, at *6.

None of this is to say that Spirdione is without any remedy for the injuries he allegedly sustained at ICF. Assuming that Spirdione could prevail on the merits, he may obtain relief by filing a new action or supplementing his complaint under Federal Rule of Civil Procedure 15(d). And were he to do so, he might then file a cognizable motion for a preliminary injunction to address the injuries identified in his current motion.[2] But because his complaint, as currently pled, does not address these injuries, the Court cannot grant injunctive relief at this time.

---

[2] Spirdione's ability to cure this deficiency by supplementing his pleadings is also why the Court cannot enjoin Washington and Kisor pursuant to the All Writs Act rather than Rule 65. The All Writs Act allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (2018). Some courts have relied on this statute to enjoin prison officials (both defendants and nonparties) from interfering with a prisoner's ongoing litigation. *E.g.*, *Lopez v. Cook*, N. 2:03-cv-1605, 2014 WL 1488518, at *2–4 (E.D. Cal. Apr. 15, 2014). *See generally United States v. New York Telephone Co.*, 434 U.S. 159, 174 (1977). However, an All Writs injunction is a "residual" power, only appropriate where no other statute can provide relief. *Pennsylvania Bureau of Correction v. USMS*, 474 U.S. 34, 43 (1985). Because Spirdione does not allege that he cannot supplement his complaint or file a new action, he can obtain the same relief through § 1983. *Cf. Chambers v. Cassady*, 639 F. App'x 400, 400 (8th Cir. 2016) ("[R]elief under the All Writs Act is only available to parties who lack an adequate alternative remedy . . . and an action under 42 U.S.C. § 1983 is available to a prisoner who claims that prison policies on legal assistance and supplies have resulted in a denial of access to the courts and have

### 2. Motion for a Show Cause Order

The Court should also deny Spirdione's motion for an order to show cause as moot. This motion, in effect, is a request for the Court to order the Defendants to file a response brief, which the undersigned did on August 29. (ECF Nos. 26, 27, 29, 32). In any event, Spirdione carries the burden of proof on his motion for a preliminary injunction—with or without a response brief—and for the reasons stated above, he fails to meet this burden. *See McNeilly v. Land*, 684 F.3d 611, 614–15 (6th Cir. 2012).

### D. Conclusion

For these reasons, **I RECOMMEND** that this Court **DENY** Plaintiff's motions for a preliminary injunction and a show cause order (ECF Nos. 24, 26).

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. §

---

caused an actual injury to the prisoner."); *Wall v. Pearson*, 323 F. App'x 391, 392 (5th Cir. 2009).

636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 6, 2022                          S/ PATRICIA T. MORRIS
                                               Patricia T. Morris
                                               United States Magistrate Judge