UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS SPIRDIONE,

    *Plaintiff,*

                      CASE NO. 2:22-cv-11018

*v.*

                      DISTRICT JUDGE NANCY G. EDMUNDS

HEIDI E. WASHINGTON, et al.,   MAGISTRATE JUDGE PATRICIA T. MORRIS

    *Defendants.*
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION TO SUPPLEMENT (ECF No. 70)

### I. RECOMMENDATION

For the reasons set forth below, I recommend that Plaintiff's Motion to Supplement his original Complaint under Fed. R. Civ. P. 15(d) (ECF No. 70) be **DENIED**.

### II. REPORT

This is a prisoner civil rights case. On May 4, 2022, Plaintiff Nicholas Spirdione, a Michigan Department of Corrections ("MDOC") inmate then housed at the G. Robert Cotton Correctional Facility ("JFC") in Jackson, Michigan, filed a 50-page Complaint alleging First and Eighth Amendment violations related to his medical care and dietary recommendations. (ECF No. 1). He now seeks to supplement the Complaint under Fed. R. Civ. P. 15(d).

### A. Plaintiff's Allegations

In support of Plaintiff's motion to supplement, he makes the following allegations. The Defendants against whom Plaintiff's Complaint survived screening under 28 U.S.C. § 1915) were served with the Complaint on June 14, 2022.[1] (ECF No. 70, PageID.1357). On June 28, 2022, Plaintiff "was the only prisoner arrested for watching TV in the dayroom and transferred to Ionia Maximum Correctional Facility." (*Id*. at PageID.1357-58). He states that his transfer was precipitated by his alleged "'threat'" against a staff member made in the Complaint. (*Id*. at PageID.59) citing (ECF No. 32, PageID.304). Plaintiff contends that the transfer to the higher security facility was made in retaliation for filing the May 2022 civil rights Complaint. (*Id*.) He protests his continued placement in the Level V security facility during the course of the investigation into his threats against the staff member, alleging that his placement at the higher security level inhibits his ability to access the prison law library. (*Id*. at PageID.1358-61).

Specifically, Plaintiff alleges that on April 19, 2022, current Defendant Sanders, a dietician employed by the MDOC, terminated his gluten free diet. (*Id*. at PageID.1374, ¶ 14). Plaintiff alleges that current Defendant Kisor, an Assistant

---

[1] Because the claims against Defendant Kisor were dismissed, then reinstated on June 8, 2022, Plaintiff alleges that it was on June 28, 2022 that she was "made aware" of the lawsuit against her. (ECF No. 70, PageID.1374).

Deputy Warden of housing and programs at JFC, transferred Plaintiff on June 28, 2022, the day she "was made aware she was being sued." (*Id*. at PageID.1374, ¶ 15). Plaintiff alleges that in July 2022, now-dismissed defendant Cobb received Plaintiff's grievance related to Kisor's retaliation but refused to process the grievance in an attempt to conceal Kisor's retaliatory transfer. (*Id*., ¶16). Plaintiff disputes that he is a security threat, stating that "from 2020 through 2022" most of his housing assignments have been in the general population and that he has not engaged in violent behavior or been issued misconduct tickets for making threats. (*Id*. at PageID.1375, ¶ 20).

    **B.    Fed. Rule Civ. P. 15(d)**

Fed. R. Civ. P. 15(d) provides that "[o]n motion or reasonable notice, the court may . . . permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." "As the plain language of the rule indicates, 'supplemental pleadings, not amended pleadings, are intended to cover matters occurring after the original complaint was filed.'" *Harrison v. Burt*, No. 2:07-CV-11412, 2008 WL 4058288, at *1 (E.D. Mich. Aug. 28, 2008) (quoting *United States ex rel. Kinney v. Stoltz,* 327 F.3d 671, 673 n.4 (8th Cir.2003)).

"The standard for granting leave to supplement under Rule 15(d) is identical to the standard governing leave to amend under Rule 15(a)." *Id.* (citing *Spies v.*

*Voinovich,* 48 Fed. Appx. 520, 527 (6th Cir.2002)). "Rule 15(d) affords courts the same level of discretion to permit supplements that Rule 15(a) affords to permit amendments." *Pharms v. Washington*, No. 1:22-CV-9, 2022 WL 3754502, at *7 (W.D. Mich. Aug. 30, 2022) (citing 6A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1504 (3d. ed. Westlaw Aug. 2019 Update)). In turn, Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Notwithstanding, leave may be denied if the proposed amendment would be futile. *Groulx v. People's Republic of China*, No. 22-11369, 2022 WL 17291405, at *3 (E.D. Mich. Nov. 28, 2022) (Lawson, J.) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "In fact, a court *should* deny a motion for leave to amend when the proposed amendment would be futile." *Id.* (citing *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)) (emphasis added).

Generally, "the same standard of review and rationale, abuse of discretion, apply to a motion to supplement under Fed. R. Civ. P. 15(d) as to a motion to amend under Fed. R. Civ. P. 15(a)." *Glenn v. Corizon Med., Inc.*, No. 2:17-CV-10972, 2020 WL 1921658, at *4 (E.D. Mich. Apr. 21, 2020) (internal citations and punctuation omitted), *objections overruled sub nom. Glenn v. Corizon Healthcare, Inc.*, No. 17-10972, 2020 WL 3867279 (E.D. Mich. July 9, 2020). However, while the grant of a motion to amend or a denial of same based on grounds other than futility is reviewed for abuse of discretion, the determination that a proposed amendment is

futile is a dispositive matter. Therefore, the Court proceeds by Report and Recommendation. "[S]ince a finding that amendment should be denied on the ground of futility amounts to a conclusion that the proposed amendment would not withstand a motion to dismiss under Rule 12(b)(6), the decision can be said to be dispositive of the proposed new claim. *Antonacci v. KJT Grp., Inc.*, No. 21-CV-6578L, 2022 WL 1656787, at *2 (W.D.N.Y. May 25, 2022) (citing *HCC, Inc. v. R H & M Mach. Co.*, 39 F.Supp.2d 317, 321-22 (S.D.N.Y. 1999)). "The Court therefore undertakes a *de novo* review of [the Magistrate Judge's] recommendation . . . to add a claim . . .be denied." *Id.*

### C. Analysis

#### 1. Defendant Sanders

Plaintiff seeks to add a claim against Sanders, a dietician, for denying the renewal of his gluten-free diet on April 19, 2022. (ECF No. 70, PageID.1374). Plaintiff's May 20, 2022 Step I grievance complaining of the April 19 denial of renewal states that Sanders "transcended her lawful authority to invade my constitutional rights" in retaliation for his naming her in the May 3, 2022 Complaint. (*Id.*)

To make a plausible claim of retaliation for the exercise of First Amendment rights, a plaintiff must allege three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a

person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The filing of a civil rights action is a constitutionally protected action for which a prisoner cannot be subjected to retaliation. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). But the retaliation claim against Sanders fails at the third prong of *Thaddeus-X*. As best as can ascertained from the proposed supplement, Plaintiff alleges that on April 19, 2022, Sanders retaliated against him for filing a civil rights claim *two weeks later* on May 3, 2022. (ECF No. 70, PageID.1375, ¶ 18). In other words, the alleged retaliatory action preceded the protected conduct. Because Plaintiff has failed to plead a causal connection between Sanders' termination of the gluten-free diet and the then-inchoate lawsuit, the motion to supplement the Complaint to add this retaliation claim is futile.[2]

Plaintiff's additional claim that Defendant Sanders improperly ordered the termination of his gluten free diet on April 19, 2022 is analyzed under the Eight

---

[2] A motion to supplement a complaint pertains to events occurring after the date of pleading. Fed. R. Civ. P. 15(d). The allegations against Sanders relating to the pre-Complaint April 19, 2022 events are properly brought under Rule 15(a). But under either Rule 15(a) or (d), the motion can be denied as to Sanders on the basis of futility.

Amendment.³ "The Eighth Amendment protects an inmate from 'cruel and unusual punishments ... which includes a right to be free from deliberate indifference to an inmate's serious medical needs." *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021) (citing *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018)). "A deliberate-indifference claim under the Eighth Amendment has an objective and a subjective component." *Id.* (internal citations omitted). "To meet the objective component, the plaintiff must show that the medical need is sufficiently serious." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). To meet the subjective prong, an official must "know of and disregard an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837. Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

Defendant Sanders' April 2022 order/recommendation to terminate the gluten free diet fails to establish a claim of deliberate indifference. July 2022

---

³ The allegations against Sanders set forth in the original Complaint are not addressed here.

treating records by David Huyge, PA, appended to Defendants' response, state that Plaintiff "does not have celiac [disease] – see negative test results [from June 2, 2020] gluten free diet not indicated."[4] (ECF No. 93, PageID.2214). Huyge adds that "MP agrees with [Sander's] April 19, 2022 termination of the gluten free diet. (*Id.*). So, even assuming that Plaintiff could show that his condition was sufficiently serious, Sanders' termination of the diet would be insufficient to show deliberate indifference. *Collick v. Smith*, No. 221CV01648JCCJRC, 2022 WL 17345258, at *8 (W.D. Wash. Oct. 20, 2022), *report and recommendation adopted,* No. 221CV01648JCCJRC, 2022 WL 17338876 (W.D. Wash. Nov. 30, 2022) (quoting *Farmer*, 511 U.S. at 837) (Where testing for Celiac disease "came back decisively negative," the defendant cannot have been found to "'draw the inference' that removing plaintiff from the gluten-free diet would place [him] at risk." *Id.* Likewise here, the July 2022 records showing that Sander's determination was backed by objective testing. Thus, the termination of the gluten free diet does not support a finding of deliberate indifference.

---

[4] As discussed above, the proposed supplement is analyzed under Fed. R. Civ. P. 12(b)(6). "When a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Plaintiff's grievance regarding Sander's April 19, 2022 termination of the gluten free diet is referenced in the motion to supplement the Complaint and Defendants' response to Plaintiff previous motion for a preliminary injunction. (ECF No. 32, PageID.374), (ECF No. 70)

### 2. Defendant ADW Kisor

Plaintiff alleges that current Defendant Kisor, an Assistant Deputy Warden of housing and programs at JFC, retaliated against him for filing suit by transferring him to a maximum security prison on June 28, 2022, the day she "was made aware she was being sued." (ECF No. 70, PageID.1374, ¶ 15).  In response, Defendants state that the transfer was precipitated by the Complaint's "troublesome contents and the MDOC's response to the perceived security threats" which were previously discussed in their response to Plaintiff's unsuccessful motion for preliminary injunction.  (ECF No. 79, PageID.1515) citing (ECF No. 32, PageID.265, 273-279, 300-338).

On October 23, 2022, the District Court adopted my Report and Recommendation to deny Plaintiff's motion for preliminary injunction seeking transfer from an MDOC security level V institution. (ECF No. 52).   My Report summarized the events leading to Plaintiff's June 2022 transfer to the maximum security facility, noting that Plaintiff was transferred after officials noticed that his Complaint "described detailed plans to kill MDOC employees."  (ECF No. 39, PageID.751) citing (ECF No. 32, PageID.304–05).

> Specifically, Spirdione shared that in 2020, he planned to make an appointment with one of his physicians so that he could "violently kill him for his continual disregard for [Spirdione's] wellbeing." (ECF No. 1, PageID.18, ¶ 81).  Spirdione also described two "alternative" plans to conduct a "hostile military takeover" of the housing units. (*Id.* at PageID.39–42, ¶¶ 137–44).  His preferred plan was to "break[]" the

> "neck" of a correctional officer passing his cell, "drag[]" the officer's "body into a" cell, and chang[e] into the officer's "gear." (*Id.* at PageID.40, ¶138). From there, Spirdione shared that he planned to "barricade" all but one entrance to the housing unit, creating a "choke point" that he would "booby trap." (*Id.*) He would then report a "knife fight" to draw other officers to this "booby trapp[ed]" choke point and "inflict maximum damage [on] his enemies." (*Id.*) Spirdione shared that he also considered making "a taser proof suit" out of blankets and "obtaining a knife." (*Id.* at PageID.40, ¶ 139). With this equipment, he would "execute" an officer, "take his keys, and slaughter every nurse" who was not in his "good graces." (*Id.*) Although Spirdione declined to act on these plans for two years, he states in his complaint that "[t]he last three and one half . . . years of incarceration . . . transformed" him into a "murderous lunatic who has extreme difficulty on occasion keeping the rage and crazy contained." (*Id.* at PageID.40–41, ¶ 141).

(ECF No. 39, PageID.751-52).

> And this was not the first time Spirdione had shared these plans with MDOC officials. (ECF No. 24, PageID.196, 198–99). In March 2022, Spirdione "divulged. . . elaborate plans targeting" prison staff. (*Id.* at PageID.198). He shared that he has had "contemplated" carrying out these plans before," but that he "talk[ed] himself out of it." (*Id.*) However, he stated that because of "various frustrations" with medical staff, he continued to have homicidal ideations over the last year and was concerned that he might not be able "to resist these thoughts." (*Id.*) Because of Spirdione's alarming homicidal ideations and his admitted difficulty restraining himself, Tiffani Kisor, the assistant deputy warden for JCF, increased Spirdione's security level classification from level one to level five while the MDOC investigated his risk to prison security. (ECF No. 32, PageID.305, ¶¶ 13–15).

(ECF No. 39, PageID.752). The Undersigned also noted that the same month the Complaint was filed, Plaintiff sent a letter to the home address of the physician he intended to kill. (*Id*. at PageID.751, n. 1) citing (ECF No. 32, PageID.353-57).

It is well established that a transfer a higher security level prison "constitutes adverse action for a retaliation claim." *Torrez v. McKee*, No. 1:06-CV-903, 2010 WL 5393869, at *4 (W.D. Mich. Dec. 2, 2010), *report and recommendation adopted,* No. 1:06-CV-903, 2010 WL 5394871 (W.D. Mich. Dec. 22, 2010) (citing *Altman v. McKee,* 2008 WL 513509, at *5 (W.D. Mich. Feb.22, 2008)). But insofar as the Complaint details Plaintiff's plans to kill prison and healthcare employees, the filing of the present lawsuit does not constitute protected conduct. *United States v. Hankins*, 195 F. App'x 295, 301 (6th Cir. 2006) (quoting *R.A.V. v. City of St. Paul,* 505 U.S. 377, 388 (1992)) ("[T]hreats 'encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals'"). "Threatening or otherwise inappropriate language does not constitute protected conduct or speech." *Bacon v. Phelps*, No. 915CV1502DNHCFH, 2018 WL 4178221, at *4 (N.D.N.Y. July 31, 2018), *report and recommendation adopted,* No. 915CV1502DNHCFH, 2018 WL 4150882 (N.D.N.Y. Aug. 30, 2018) (The plaintiff's letter contained language "perceived as a sexual threat against a prison employee, which is separate and distinct from the plaintiff's conduct in the exercise of free speech.") (internal citations and punctuation omitted), *aff'd,* 961 F.3d 533 (2d Cir. 2020)). The portions of the Complaint, summarized above, are not "protected speech." Moreover, assuming

that a causal connection exists between service of the Complaint to Kisor and the transfer, the causal connection exists between her knowledge of the threats and the transfer, not the "protected activity" of filing a civil rights lawsuit.

### 3. Defendant Cobb

Plaintiff alleges that in July 2022, now-dismissed defendant Cobb received Plaintiff's grievance related to Kisor's retaliation but refused to process the grievance to conceal Kisor's retaliatory transfer. (*Id.*, ¶16)

As discussed in the District Court's summary dismissal of Cobb under 28 U.S.C. § 1915(e)(2)(B), "the wrongful denial of a prison grievance by a prison official does not violate any federal constitutional right, in the absence of any allegation that the official was involved in the underlying activity that was challenged in the grievance." (ECF No. 7, PageID.92) (quoting *Grinter v. Knight*, 532 F. 3d 567, 576 (6th Cir. 2008)) (denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983). Further, Plaintiff provides no factual basis for his claim that Cobb actually received, rejected, ignored, and/or processed the grievance(s) in question. To the extent that Plaintiff alleges that Cobb was part of a scheme to organize a retaliatory transfer against him for filing the current Complaint, the threats of physical violence against various prison and medical staff members does not constitute protected

activity under a *Thaddeus-X* analysis. The claims of retaliation against Cobb also fail for the same reasons as those against Kisor.

### D. Conclusion

For these reasons, **IT IS RECOMMENDED** that Plaintiff's Motion to Supplement under Fed. R. Civ. P. 15(d) (ECF No. 70) be **DENIED.**

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,

1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 15, 2023

s/PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge